**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONNA BEATTY,<br>*Plaintiff,*<br>v.<br>CITIBANK, N.A.,<br>*Defendant.* | Civil Action No.: 1:26-cv-8335<br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1. Plaintiff Donna Beatty maintained a Regular Checking account ending in 7161 with Defendant Citibank, N.A. ("Citibank").

2. On May 6, 2026, Citibank told Plaintiff that it had identified attempted fraudulent activity on her debit card, cancelled that card, and shipped a replacement. Citibank shipped the replacement card to 14025 East State Fair Street, which upon information and belief is a street address for a property in Detroit, Michigan, and which was not Plaintiff's address.

3. On May 9, 2026, a person other than Plaintiff activated the replacement card, set a personal identification number for it, and took $6,473.48 from the account through purchases and cash withdrawals at merchants and automated teller machines in Michigan. Plaintiff was in New York City that day, and has no connection to the state of Michigan.

4. Plaintiff notified Citibank on May 10, 2026, the day after the transfers. Citibank opened two claims, gave Plaintiff no credit for any part of the money, and by two letters dated May 20, 2026 told her that the transactions had been made with her card and personal identification number and, as to five of them, that they "appear(s) to be consistent with your normal banking activities."

5. Plaintiff brings claims against Citibank under the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. ("EFTA"), and for breach of contract.

## JURISDICTION AND VENUE

6. The Court has jurisdiction pursuant to 15 U.S.C. § 1693m(g) and 28 U.S.C. § 1331.

7. The Court has supplemental jurisdiction over Plaintiff's breach of contract claim pursuant to 28 U.S.C. § 1367. Jurisdiction over Plaintiff's request for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District, a substantial part of the events and occurrences underlying this litigation occurred in this District, and Citibank regularly conducts business in this District.

## PARTIES

9. Plaintiff is a natural person and a citizen of the United States residing in New York County, New York.

10. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1693a(6).

11. Citibank, N.A. is a national banking association organized under the laws of the United States and was, at all times relevant to this Complaint, a "financial institution" as defined by 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i).

## FACTUAL ALLEGATIONS

### A. The Account

12. Plaintiff maintained Regular Checking account number 50237161 (the "Account") and Citibank Savings Plus account number 64557369 with Citibank.

13. Plaintiff used the Account for personal, family and household purposes and not for business purposes. Plaintiff accessed the Account with a Citibank debit card ending in 3762. The Account held $6,170.32 at the start of the May 2026 statement period.

**B. May 6, 2026: Citibank cancels Plaintiff's card and ships a replacement**

14. On May 6, 2026, Citibank telephoned Plaintiff and told her that it had identified attempted fraudulent automated teller machine activity on her debit card at a Sam's Club location. During that call Citibank cancelled the card ending in 3762 and told Plaintiff that it would ship a replacement card to her.

15. Citibank sent Plaintiff an electronic message on May 6, 2026 stating that a replacement card ending in 3761 had been shipped, that the estimated delivery date was May 8, 2026, and that the shipping address was 14025 East State Fair Street.

16. Plaintiff's address of record with Citibank was, and remains, 323 West 75th Street, Apartment A, New York, New York 10023.

17. Plaintiff has never resided at 14025 East State Fair Street, has never received mail at that address, and has no connection to it. Plaintiff did not ask Citibank to change the address on the Account and did not ask Citibank to send the replacement card to any address other than her own. More generally, Plaintiff has never resided in Michigan and has no connection to Michigan.

18. Plaintiff never received the replacement card ending in 3761.

**C. May 9, 2026: the unauthorized electronic fund transfers**

19. On May 9, 2026, a person other than Plaintiff activated the replacement card ending in 3761 and set a personal identification number for that card.

20. Citibank telephoned Plaintiff on May 9, 2026 and told her that someone was attempting to change the personal identification number on the replacement card. Plaintiff told Citibank that she had not received the card.

21. At or about 10:54 a.m. Eastern Time on May 9, 2026, Citibank sent Plaintiff an email headed "Fraud Alert: Your Citibank Debit Card," stating that it had noticed suspicious activity on the card ending in 3761, identifying an attempted $4,000.00 purchase that day at Harding Market, reporting that the attempt had been declined, and asking Plaintiff to confirm whether she recognized it.

22. At or about the times below, all Eastern Time, on May 9, 2026, seven transfers totaling $6,473.48 were made from the Account with the card ending in 3761:

a. at or about 10:56 a.m., debit personal identification number purchase, Harding Market, Detroit, Michigan, $3,999.88;
b. at or about 11:12 a.m., debit personal identification number purchase, United States Post Office 25251202, Detroit, Michigan, $993.60;
c. at or about 12:54 p.m., cash withdrawal, automated teller machine at 20422 Mack Avenue, Grosse Pointe, Michigan, $300.00;
d. at or about 12:55 p.m., cash withdrawal, automated teller machine at 20422 Mack Avenue, Grosse Pointe, Michigan, $300.00;
e. at or about 12:56 p.m., cash withdrawal, automated teller machine at 20422 Mack Avenue, Grosse Pointe, Michigan, $300.00;
f. at or about 1:25 p.m., cash withdrawal, automated teller machine at 21211 Harper Avenue, St. Clair Shores, Michigan, $300.00; and
g. at or about 1:26 p.m., cash withdrawal, automated teller machine at 21211 Harper Avenue, St. Clair Shores, Michigan, $280.00.

23. At or about 12:13 p.m. Eastern Time on May 9, 2026, $1,600.00 was transferred by telephone from Plaintiff's Savings Plus account into the Account with the card ending in 3761.

24. Plaintiff did not make or authorize any of the transfers identified in the two preceding paragraphs, and received no benefit from any of them.

25. Citibank declined the attempted $4,000.00 purchase at Harding Market and approximately two minutes later approved a $3,999.88 purchase at the same merchant with the same card.

26. The Account balance fell from $6,170.32 at the start of the statement period to $0.26 at its close.

**D. Plaintiff was in New York City on May 9, 2026**

27. Plaintiff was in Manhattan throughout May 9, 2026. She made purchases that day with a Chase Freedom credit card ending in 5348 at Eataly Caffe Lexington, at Fairway Market, and at a pharmacy in New York, New York.

28. Plaintiff also placed orders through the Fairway Market and Eataly mobile applications on May 9, 2026.

**E. May 10, 2026: Plaintiff reports the transfers to Citibank**

29. On May 10, 2026, Plaintiff logged into the Account, saw that the funds were gone, and telephoned Citibank to report that the transfers were not hers.

30. Citibank opened two claims and sent Plaintiff two written acknowledgments dated May 10, 2026, numbered R-132115260510 and R-132120260510, each stating that Citibank was reviewing her inquiry and would contact her in writing with the results of its investigation.

31. On May 11, 2026, Citibank closed the Account, which Plaintiff had maintained for more than twenty years, and told Plaintiff that she could open a new account as a new customer or move her banking elsewhere. Citibank did not give Plaintiff any credit, provisional or otherwise, for any part of the $6,473.48.

**F. May 20, 2026: Citibank's determinations**

32. By letter dated May 20, 2026 addressed to claim R-132120260510 and the two transfers totaling $4,993.48, Citibank told Plaintiff that it had completed its investigation and

concluded that "these transactions were made from your account with your Citibank Debit Card" and that "both your card and PIN (Personal Identification Number), were required to make these transactions."

33. By letter dated May 20, 2026 addressed to claim R-132115260510 and the five transfers totaling $1,480.00, Citibank told Plaintiff that the transactions were made with her card and personal identification number, "which appear(s) to be consistent with your normal banking activities."

34. Neither letter refers to the address to which Citibank shipped the replacement card, to the locations of the transactions, to Citibank's telephone calls to Plaintiff on May 6 and May 9, 2026, or to any card shipment record, address record, automated teller machine surveillance record, or call recording.

35. Citibank has not reimbursed Plaintiff for any part of the $6,473.48.

**G. June 8, 2026: Plaintiff's written dispute**

36. By letter dated June 8, 2026, Plaintiff disputed the transfers. Her dispute identified the Account, the disputed transfers and the amount in dispute, stated that the transfers were not hers and were unauthorized, and requested the documents on which Citibank relied. Plaintiff mailed the letter on June 9, 2026.

37. Citibank has not responded to Plaintiff's letter of June 8, 2026.

**H. Consequences to Plaintiff**

38. Plaintiff is 66 years old and lives on a fixed income.

39. Plaintiff had no other funds available to meet her rent and her monthly bills after the Account was emptied, and borrowed money from a family member to pay them.

40. The loss of the funds and the closure of the Account interrupted payments Plaintiff had scheduled from the Account. Plaintiff spent hours over a period of days re-establishing those payment arrangements on the new account.

41. Plaintiff reported the transfers to the Consumer Financial Protection Bureau, the Federal Trade Commission, the Office of the Comptroller of the Currency, and the Internet Crime Complaint Center of the Federal Bureau of Investigation.

42. Ms. Beatty has suffered emotional distress as a result of Citibank's misconduct, including but not limited to deep embarrassment and distress at having to ask family to cover her rent and other bills, the stress of having her scheduled payments cut off and having to re-establish them, and strained family relationships.

**COUNT I**

**Liability for Unauthorized Electronic Fund Transfers, 15 U.S.C. § 1693g**

43. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

44. Under the EFTA, Regulation E, 12 C.F.R. Part 1005, and Regulation E's Official Interpretations, Citibank bears responsibility for unauthorized electronic fund transfers such as the transfers at issue here.

45. The EFTA defines an "unauthorized electronic fund transfer" as

> an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit . . . 15 U.S.C. § 1693a(12).

46. The transfers identified above were initiated by a person other than Plaintiff, without actual authority, and Plaintiff received no benefit from them. They were unauthorized electronic fund transfers.

47. Section 1693g(a) provides in relevant part:

> In no event . . . shall a consumer's liability for an unauthorized transfer exceed the lesser of- (1) $50; or (2) the amount of money or value of property or services obtained in such unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected. 15 U.S.C. § 1693g(a).

48. A consumer's liability for unauthorized use is capped at $50 where the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, and at $500 where the consumer does not. Plaintiff notified Citibank on May 10, 2026, the day after the transfers, so her liability cannot exceed $50.

49. The rules are set out in Regulation E, 12 C.F.R. § 1005.6(b):

> (1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.

50. Denials based on a consumer's alleged negligence are prohibited under Regulation E. See Official Interpretations to Regulation E, 12 C.F.R. pt. 1005, Supp. I, cmt. 6(b)-2 ("[n]egligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E.").

51. The EFTA places the burden of proof on the financial institution to show that a challenged transfer was authorized. 15 U.S.C. § 1693g(b). Citibank cannot carry that burden here, where Plaintiff never received the card used to make the transfers, was in New York City while the transfers were made in Michigan, reported the transfers the following day, and provided Citibank the documents it asked for.

52. By holding Plaintiff liable for $6,473.48 in unauthorized electronic fund transfers and refusing to reimburse her, Citibank violated 15 U.S.C. § 1693g. Plaintiff is entitled to

declaratory judgment, actual damages, statutory damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m.

**COUNT II**

**Failure to Conduct a Reasonable Investigation, 15 U.S.C. § 1693f**

53. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

54. Plaintiff's oral report of May 10, 2026 and her written letter of June 8, 2026 were each a notice of error under 15 U.S.C. § 1693f(a). Each was given within sixty days after Citibank transmitted to Plaintiff the account documentation reflecting the transfers.

55. Section 1693f(a) required Citibank to investigate the alleged error, determine whether an error occurred, and report or mail the results of its investigation and determination to Plaintiff. Where a financial institution determines that no error occurred, section 1693f(d) requires it to deliver a written explanation of its findings and to notify the consumer of her right to request reproductions of the documents on which it relied.

56. Citibank's investigation did not include a review of its own records of the shipment of the replacement card, its own records of any change to the address on the Account, the recordings of its May 6 and May 9, 2026 calls with Plaintiff, its own fraud alert of May 9, 2026 identifying the Harding Market transaction as suspicious and declining it, or surveillance records from the automated teller machines at which the withdrawals were made. Each of those records was in Citibank's possession or subject to its control.

57. Citibank's determination could not reasonably be drawn from the evidence available to it. Specifically, Citibank determined that the transfers, made at automated teller machines and merchants in Michigan with a card Plaintiff had told Citibank she never received, appeared to be consistent with Plaintiff's normal banking activities. That evidence included

Citibank's own record that it had shipped the replacement card to an address that was not Plaintiff's, its own identification of attempted fraud on the Account on May 6, 2026, its own call to Plaintiff on May 9, 2026 reporting an attempt to change the personal identification number on a card she had not received, and its own fraud alert of May 9, 2026 declining a $4,000.00 purchase at Harding Market minutes before it approved a $3,999.88 purchase at the same merchant.

58. Citibank did not conduct a good faith investigation of Plaintiff's notice of error and did not have a reasonable basis for believing that the Account was not in error.

59. Citibank knowingly and willfully concluded that the Account was not in error when that conclusion could not reasonably have been drawn from the evidence available to it at the time of its investigation, in violation of 15 U.S.C. § 1693f(e).

60. Citibank has not corrected the error or reimbursed Plaintiff, and has not responded to Plaintiff's written notice of error of June 8, 2026.

61. As a direct and proximate result of Citibank's violations of the EFTA, Plaintiff is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1693f(e) and 1693m.

**COUNT III**

**Breach of Contract**

62. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

63. Citibank's accountholder agreement provides that Plaintiff's liability for unauthorized use of her Citibank banking card is $50.

64. Citibank breached that promise.

65. Specifically, although Plaintiff promptly reported the unauthorized transfers, Citibank improperly held her liable for the unauthorized use of the card and refused to reimburse her.

66. As a result of Citibank's breach, Plaintiff has been damaged in an amount to be determined at trial, together with interest and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment in her favor and against Citibank:

A. awarding Plaintiff actual damages;

B. awarding Plaintiff treble damages;

C. awarding Plaintiff statutory damages;

D. declaring that Plaintiff is not liable for the unauthorized electronic fund transfers beyond the limit the law allows;

E. awarding Plaintiff her costs and reasonable attorneys' fees;

F. awarding Plaintiff pre-judgment and post-judgment interest; and

G. granting such other and further relief, including equitable and declaratory relief, as may be necessary, just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues triable by jury.

Dated: August 24, 2026

Respectfully submitted,

*/s/Daniel A. Schlanger*
Daniel A. Schlanger
Schlanger Law Group, LLP
150 Allens Creek Road, Suite 240
Rochester, New York 14618
T: 212-500-6114
F: 646-612-7996
E: dschlanger@consumerprotection.net

Counsel for Plaintiff